In the UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

**CHASITY SMITH**                              **CASE NO. 2:25-CV-00021**

**VERSUS**                                     **JUDGE JAMES D. CAIN, JR.**

**1ST ABUNDANT HOME CARE L L C ET AL**         **MAGISTRATE JUDGE LEBLANC**

MEMORANDUM RULING

Before the court is a Motion for Default Judgment filed by plaintiff against defendant 1st Abundant Home Care LLC ("1st Abundant") under Federal Rule of Civil Procedure 55.

I.
BACKGROUND

Plaintiff filed this suit under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, against her former Alicia Williams and 1st Abundant on January 8, 2025.[1] She alleges that 1st Abundant and its operator, Ms. Williams, employed her and willfully failed to pay the minimum and overtime wages owed to her under the FLSA from January 8, 2022, to the end of her employment in July 2023. Doc. 1.

Although plaintiff has been unable to serve Ms. Williams, 1st Abundant was served on January 31, 2025. Docs. 3, 9. At plaintiff's request, the clerk entered a default against

---

[1] Plaintiff filed this suit as a collective action under the FLSA, on behalf of herself and other similarly situated employees, but the suit has not been conditionally certified as a collective action. Plaintiff only seeks a default judgment for herself individually and does not seek collective relief or certification under this motion. Doc. 12, att. 1, p. 3.

1st Abundant on July 15, 2025. Doc. 11. On August 7, plaintiff filed this motion seeking default judgment against 1st Abundant on her unpaid overtime wages claim.[2] Doc. 12.

## II.
### LAW & APPLICATION

#### A. Governing Law

There is a three-step process for securing a default judgment under Federal Rule of Civil Procedure 55. *New York Life Ins. Co. v. Brown*, 84 F.3d 137, 141 (5th Cir. 1996). First, a default occurs when a party "has failed to plead or otherwise defend" against an action. Fed. R. Civ. P. 55(a). The movant then establishes the default "by affidavit or otherwise." *Id.* After the clerk has entered a default, the movant may apply for a default judgment. *Id.* at 55(b).

"Default judgments are a drastic remedy, not favored by the Federal Rules" and are available "only when the adversary process has been halted because of an essentially unresponsive party." *Sun Bank of Ocala v. Pelican Homestead & Sav. Ass'n*, 874 F.2d 274, 276 (5th Cir. 1989). Default judgment "should not be granted on the claim, without more, that the defendant had failed to meet a procedural time requirement." *Mason & Hanger–Silas Mason Co., Inc. v. Metal Trades Council*, 726 F.2d 166, 168 (5th Cir. 1984). In determining whether to enter a default judgment, courts in the Fifth Circuit consider: "1) whether the entry of default judgment is procedurally warranted, 2) whether a sufficient basis in the pleadings based on the substantive merits for judgment exists, and 3) what form of relief, if any, a plaintiff should receive." *Graham v. Coconut LLC*, 2017 WL 2600318,

---

[2] Plaintiff did not seek a default judgment on her minimum wage claim. *See* doc. 12, att. 1.

at *1 (E.D. Tex. June 15, 2017) (Mazzant, J.) (citing *Lindsey v. Prive Corp.*, 161 F.3d 886, 893 (5th Cir. 1998)). A court may conduct hearings when it needs to "establish the truth of any allegation by evidence . . . or . . . investigate any other matter." *Wooten v. McDonald Transit Assoc., Inc.*, 788 F.3d 490, 496 (5th Cir. 2015) (citing Fed. R. Civ. P. 55(b)(2)(C)).

## B. Application

### 1. Procedural issues

In determining whether a default judgment is procedurally warranted, the court considers:

> [1] whether material issues of fact exist; [2] whether there has been substantial prejudice; [3] whether the grounds for default are clearly established; [4] whether the default was caused by a good faith mistake or excusable neglect; [5] the harshness of a default judgment; and [6] whether the court would think itself obliged to set aside the default on the defendant's motion.

*Lindsey*, 161 F.3d at 893.

Because 1st Abundant has filed no responsive pleadings, plaintiff's well-pled allegations are deemed admitted and there are no material issues of fact. *Nishimatsu Constr. Co., Ltd. v. Hous. Nat'l Bk.*, 515 F.2d 1200, 1206 (5th Cir. 1975). Additionally, the grounds for default have been clearly established based on 1st Abundant's failure to appear and plaintiff is harmed by the continued delays in her case. *Champion v. Phaselink Util. Solutions, LLC*, 2022 WL 3693461, at *3 (W.D. Tex. Aug. 24, 2022) (citing *United States v. Fincanon*, 2009 WL 301988, at *2 (N.D. Tex. Feb. 6, 2009)). There is nothing in the record to suggest that the default is the result of a good faith mistake or excusable neglect. The clear basis for a default and the failure to cure it "mitigate[] the harshness of a default

judgment." *J&J Sports Prods., Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F.Supp.3d 809, 814 (N.D. Tex. 2015) (internal quotations omitted). Given these circumstances, the court cannot find any grounds on which it would later feel obligated to set aside the default. *Montoya Garcia v. Overnight Cleanse, LLC*, 2021 WL 902494, at *3 (N.D. Tex. Jan. 22, 2021). Accordingly, plaintiff has satisfied the procedural prerequisites for a default judgment.

### 2. Merits of allegations

At the second step courts assume that due a defaulted defendant admits all well-pleaded facts in the plaintiff's complaint. *Nishimatsu Constr. Co., Ltd.*, 515 F.2d at 1206. However, a "defendant is not held to admit facts that are not-well pleaded or to admit conclusions of law." *Id.* To this end, the court "draw[s] meaning from the case law on Rule 8" and requires only that factual allegations in the complaint "be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Montoya Garcia*, 2021 WL 902494 at *4 (quoting *Wooten*, 788 F.3d at 497).

The FLSA requires that employers pay all nonexempt employees at least one and a half times their regular rate of pay for hours worked in excess of forty per week. 29 U.S.C. § 207(a)(1). Employers who violate this provision of the FLSA are liable for "unpaid overtime compensation . . . and an additional amount as liquidated damages." 29 U.S.C. § 216(b). An employee bringing an action under the FLSA for unpaid overtime compensation must show: (1) that an employer-employee relationship existed during the unpaid overtime periods claimed; (2) that the employee engaged in activities within the FLSA's coverage;

(3) that the employer violated the FLSA's overtime wage requirements; and (4) the amount of overtime compensation due. *Johnson v. Heckmann Water Res. (CVR), Inc.*, 758 F.3d 627, 630 (5th Cir. 2014).

### i.     **Employment status**

In FLSA actions, courts apply a broader definition to "employer" than the one traditionally used under the common law. *McLaughlin v. Seafood, Inc.*, 867 F.2d 875, 877 (5th Cir. 1989). An "employer" includes "any person acting directly or indirectly in the interest of an employer in relation to an employee." 29 U.S.C. § 203(d). The court examines the totality of the relationship in light of economic realities. *Ho v. Xpress Pho, LLC*, 2015 WL 1810339, at *3 (N.D. Tex. Apr. 20, 2015) (citing *Williams v. Henagan*, 595 F.3d 610, 620 (5th Cir. 2010)). This test "includes inquiries into whether the alleged employer (1) has the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Watson v. Graves*, 909 F.2d 1549, 1553 (5th Cir. 1990). "No single factor is determinative" and each is instead "a tool used to gauge the **economic dependence** of the alleged employee" which "must be applied with this ultimate concept in mind." *Hopkins v. Cornerstone America*, 545 F.3d 338, 343 (5th Cir. 2008) (emphasis in original).

Plaintiff alleges as follows: 1st Abundant employed her "as a domestic service employee who provided companionship services in the homes of Defendants' clients." Doc. 1, ¶ 2. Through its owner, defendant Alicia Williams, 1st Abundant set her rate of pay, assigned her work, disciplined her, and exercised the power to hire and fire her. Doc. 1, ¶

22; doc. 12, att. 4, ¶¶ 7–14. Accepting these allegations as true, the court finds that 1st Abundant controlled the economic aspects of the business. There is no indication that plaintiff had the power to negotiate her wages or control any other aspect of her employment, such that she might instead be considered an independent contractor. Accordingly, the first element of her claim is satisfied.

### ii. Activities within coverage of FLSA

Consistent with Congress's power to regulate interstate commerce, the FLSA mandates minimum wage and overtime compensation for employees who are (1) 'engaged in commerce or in the production of goods for commerce' (individual coverage) or (2) 'employed in an enterprise engaged in commerce or in the production of goods for commerce' (enterprise coverage)." *Landeros v. Fu King, Inc.*, 12 F.Supp.3d 1020, 1022 (S.D. Tex. 2014) (quoting 29 U.S.C. §§ 206(a), 207(a)). Under the FLSA, "commerce" is defined as "trade, commerce, transportation, transmission, or communication among the several States or between any State and any place outside thereof." 29 U.S.C. § 203(b). "*Either* individual *or* enterprise coverage is enough to invoke FLSA protection." *Martin v. Bedell*, 955 F.2d 1029, 1032 (5th Cir. 1992) (emphasis in original).

Congress empowered the Secretary of Labor to "define[] and delimit[]" the scope of workers exempted from the minimum wage and overtime provisions of the FLSA. *Barnes v. Res. For Human Dev., Inc.*, 2024 WL 4566113, at *2 (E.D. Penn. Oct. 24, 2024) (citing Fair Labor Standards Amendments of 1974, § 29(b), 88 Stat. 76. Under Department of Labor regulations, "companionship services means the provision of fellowship and protection for an elderly person or person with an illness, injury, or disability who requires

assistance in caring for himself or herself." 29 C.F.R. 552.6(a). The minimum wage and overtime requirements generally do not apply to "any employee employed in domestic service employment to provide companionship services for individuals who (because of age or infirmity) are unable to care for themselves[.]" 29 U.S.C. § 213(a)(15). But "[t]hird party employers of employees engaged in companionship services within the meaning of § 552.6 may not avail themselves of the minimum wage and overtime exemption provided by section 13(a)(15) of the Act, even if the employee is jointly employed by the individual or member of the family or household using the services." 29 U.S.C. § 552.109(a).

Plaintiff was engaged as a companion, but by third parties for the service of their clients. Accordingly, her work does not fall under § 213(a)(15)'s exemption. Further, "services performed by employees such as companions . . . home health aides, [and] personal care aides" qualify as "domestic service employment." 29 C.F.R. § 552.3. "Congress in section 2(a) of the [FLSA] specifically found that the employment of persons in domestic service in households affects commerce." 29 C.F.R. § 552.99. Accordingly, individual coverage applies to her allegations.[3]

    iii.    **Violation of FLSA overtime wage requirements**

As stated above, the FLSA requires that employers pay non-exempt employees one and a half times their regular rate of pay for all hours worked over forty per week. 29 U.S.C. § 207. From the pleadings, it does not appear that any exemptions apply to plaintiff. *See*

---

[3] To establish enterprise coverage, plaintiff must also show that the employer has an annual gross of at least $500,000.00. 29 U.S.C. § 203(s)(1)(A)(ii). Plaintiff alleges that 1st Abundant meets this benchmark and "employed between 45-55 employees during the relative time period." Doc. 12, att. 1, p. 8; *see* doc. 1, ¶ 17. The court need not reach the issue, however, because individual coverage is already established.

29 C.F.R. § 552.109(a). She alleges, and submits payroll records to verify, that she was paid overtime for the two pay periods in January 2021 but only occasionally thereafter until the end of her employment in July 2023. *See* doc. 12, att. 2. During this time she made between $7.25 and $9.00/hour and regularly worked over 60 hours per week. *Id.* Accordingly, plaintiff has shown a clear violation by 1st Abundant of the FLSA's overtime requirements.

### iv. Amount of overtime compensation due

The amount of overtime compensation due depends on the appropriate lookback period. Normally, a claim for unpaid overtime under the FLSA must be brought "within two years after the cause of action accrued." 29 U.S.C. § 255(a). When the cause of action arises from a "willful violation," however, it "may be commenced within three years after the cause of action accrued." *Id.* The plaintiff bears the burden of showing that an employer's violation was willful and that a three-year statute of limitations is therefore appropriate. *Patterson v. O'Bar Wrecker Service, LLC*, 685 F.Supp.3d 387, 398 (N.D. Tex. 2023) (citing *Cox v. Brookshire Grocery Co.*, 919 F.2d 354, 356 (5th Cir. 1990)).

"An FLSA violation is willful if the employer 'knew or showed reckless disregard for the matter of whether its conduct was prohibited by statute.'" *Mohammadi v. Nwabuisi*, 605 F. App'x 329, 332 (5th Cir. 2015) (quoting *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 133 (1988)). "[M]erely negligent or unreasonable conduct" falls short of this burden. *Clay v. New Tech Glob. Ventures, LLC*, 2019 WL 1028532, at *6 (W.D. La. Mar. 4, 2019) (citing *McLaughlin*, 486 U.S. at 135 n. 13). "Courts across the country have found the following evidence sufficient to support an inference of willfulness: '(1) admissions

that an employer knew its method of payment violated the FLSA prior to the accrual of the action; (2) continuation of a pay practice without further investigation after being put on notice that the practice violated the FLSA; (3) earlier violations of the FLSA that would put the employer on actual notice of the [r]equirements of the FLSA; (4) failure to keep accurate or complete records of employment; and (5) prior internal investigations which revealed similar violations.'" *Patterson*, 685 F.Supp.3d at 398 (quoting *Bingham v. Jefferson County, Tex.*, 2013 WL 1312563, at *14 (E.D. Tex. 2013), *report and recommendation adopted as modified*, 2013 WL 1312014 (E.D. Tex. Mar. 27, 2013)).

Plaintiff alleges that 1st Abundant "knew Plaintiff [was] non-exempt and entitled to an overtime premium," but nevertheless "knowingly, willfully, or in reckless disregard of the law" refused to pay overtime compensation. Doc. 1, ¶¶ 49–50. Payroll records show that overtime hours were recorded for most pay periods, and that overtime was even paid for some pay periods early in plaintiff's employment. The fact that 1st Abundant recorded plaintiff's overtime hours but ceased to compensate her for them, combined with plaintiff's allegations that it was aware that she was non-exempt and entitled to same under federal law, supports a finding of willfulness. Accordingly, the court will apply the three-year lookback from the date this action was filed on January 8, 2025.

Plaintiff has calculated the unpaid overtime based on a half-rate of $3.63 from January 8 to August 24, 2022, when her wage was $7.25/hour, and $4.50 from August 25, 2022, through July 26, 2023, when her wage was $9.00/hour. During this time plaintiff worked approximately 1937.26 hours of overtime without the additional compensation

due. *See* doc. 12, atts. 2–3. Based on the above dates and rates, her unpaid overtime amounts to $8,023.57. *Id.*

### 3. Award

#### a. Compensatory and liquidated damages

A defendant's default only concedes the truth of the complaint's factual allegations on liability—not damages. *J&J Sports Prods., Inc. v. Morelia Mexican Restaurant, Inc.*, 126 F.Supp.3d 809, 816 (N.D. Tex. 2015) (citing *Jackson v. FIE Corp.*, 302 F.3d 151, 524-25 (5th Cir. 2002)). On a default judgment, a hearing is unnecessary to establish damages if the amount can be determined with a mathematical calculation by reference to the pleadings and supporting documents. *Wattiker v. Elsenbary Enterprises, Inc.*, 2023 WL 5167023, at *2 (N.D. Tex. May 19, 2023) (citing *James v. Frame*, 6 F.3d 307, 310 (5th Cir. 1993)). The plaintiff has the burden of providing an evidentiary basis for the damages sought. *Broadcast Music, Inc. v. Bostock Billiards & Bar Assoc.*, 2013 WL 12126268, at *3 (N.D. Tex. Jan. 18, 2013).

Plaintiff has established her entitlement to unpaid overtime in the amount of $8,023.57 through detailed affidavits and payroll records. She also seeks liquidated damages and attorney fees. "Under the FLSA, an employer who violates the overtime provisions is liable not only for the unpaid overtime compensation, but also for 'an additional equal amount as liquidated damages.'" *Gallegos v. Equity Title Co. of Am.*, 484 F.Supp.2d 589, 598 (W.D. Tex. 2007) (quoting 29 U.S.C. § 216(b)). The district court may only reduce or eliminate the liquidated damages award if "the employer first sustains its burden of showing that its failure to obey the statute was in good faith." *Montoya Garcia*,

2021 WL 902494 at *6 (quoting *Nero v. Indus. Molding Corp.*, 167 F.3d 921, 928 (5th Cir. 1999)). Because 1st Abundant has failed to respond to the suit, and nothing else in the record supports a finding of its good faith, the court will award liquidated damages in the amount of $8,023.57 for a total damages award of $16,047.14.

### b. Attorney fees

Finally, the FLSA also allows plaintiff to recover her reasonable costs and attorney fees. 29 U.S.C. § 216(b). The Fifth Circuit generally calculates the attorney fee award under the FLSA using the lodestar method. *Saizan v. Delta Concrete Prod. Co.*, 448 F.3d 795, 799 (5th Cir. 2006); *Strong v. BellSouth Telecomms., Inc.*, 137 F.3d 844, 850 (5th Cir. 1998). The lodestar is calculated by multiplying the number of hours reasonably expended on the case by an appropriate hourly rate, which is the market rate in the community for this work. *Smith & Fuller, P.A. v. Cooper Tire & Rubber Co.*, 685 F.3d 486, 490 (5th Cir. 2012). The party seeking the fee award must establish both the hours expended and the reasonableness of the rate at which they were billed. *Watkins v. Fordice*, 7 F.3d 453, 457 (5th Cir. 1993). The court uses this time as a benchmark and then excludes any time it finds to be excessive, duplicative, unnecessary, or inadequately documented. *See id.* The remaining hours are those reasonably expended. *Saizan*, 448 F.3d at 800.

The district court may then decrease or enhance the lodestar based on the twelve factors set forth in *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714, 717–19 (5th Cir. 1974).[4] The lodestar may not be adjusted due to a *Johnson* factor, however, if the

---

[4] The *Johnson* factors are: (1) "time and labor required" for the litigation; (2) "novelty and difficulty of the questions" presented; (3) "skill requisite to perform the legal service properly;" (4) "preclusion of other employment;" (5) whether the fee is "customary;" (6) "[w]hether the fee is fixed or contingent;" (7) "[t]ime limitations imposed by the client or

creation of the lodestar award already took that factor into account. *Heidtman v. County of El Paso*, 171 F.3d 1038, 1043 (5th Cir. 1999). Further, "[t]he lodestar ... is presumptively reasonable and should be modified only in exceptional cases." *Watkins*, 7 F.3d at 457.

Plaintiff is represented by Philip Bohrer and Scott Brady of Bohrer Brady, LLC, a firm based out of Baton Rouge, Louisiana. The primary focus of the firm is wage and hour litigation. Mr. Bohrer is in his thirty-ninth year of practicing law while Mr. Brady is in his twenty-seventh, and both are admitted to numerous state and federal courts at the trial appellate levels. Mr. Bohrer is also admitted to practice before the United States Supreme Court. Mr. Bohrer's customary rate in Louisiana is $600/hour while Mr. Brady's is $550/hour. Doc. 12, atts. 5 & 6. For this matter, however, they seek hourly rates of $450/hour for both attorneys, $100/hour for paralegals, and $75/hour for staff. Doc. 12, att. 1, p. 11.

"Hourly rates are to be computed according to the prevailing market rates in the relevant legal market." *Hopwood v. Texas*, 236 F.3d 256, 279 (5th Cir. 2000). The relevant legal market is where the district court sits generally. *E.g., Calix v. Ashton Marine LLC*, 2016 WL 4194119, at *3 (E.D. La. July 14, 2016). Out-of-district counsel may use his home district as the basis for the lodestar "under certain limited circumstances," such as when "abundant and uncontradicted evidence" show the necessity of turning to out-of-district counsel. *Franciscan Alliance, Inc. v. Becerra*, 681 F.Supp.3d 631, 643 (N.D. Tex.

---

the circumstances;" (8) "amount involved and the results obtained;" (9) "experience, reputation, and ability of the attorneys;" (10) "'undesirability' of the case;" (11) "nature and length of the professional relationship with the client;" and (12) "[a]wards in similar cases." *Johnson*, 488 F.2d at 717–719.

2023) (quoting *McClain v. Lufkin Indus., Inc.*, 649 F.3d 374, 381–82 (5th Cir. 2011)). However, "a district court 'is itself an expert' on the issue of fees and 'may consider its own knowledge and experience concerning reasonable and proper fees and may form an independent judgment with or without the aid of witnesses as to value.'" *Winget v. Corp. Green, LLC*, 2011 WL 2173840, at *6 (M.D. La. May 31, 2011) (quoting *Campbell v. Green*, 112 F.2d 143, 144 (5th Cir. 1940)).

Plaintiff cites recent cases from the Middle District of Louisiana showing that rates between $400 and $500/hour have been approved for Mr. Bohrer and Mr. Brady. But Baton Rouge is not the relevant legal market for this analysis. The court is aware that there are numerous practitioners within this district who litigate FLSA cases. Recently, a court in the Shreveport division of this district approved a $365/hour rate customarily billed by one such attorney with twenty-two years of experience as within prevailing market rates, "albeit on the upper end." *Revell v. Prince Preferred Hotels Shreveport, LLC*, 2024 WL 3625214, at *4 (W.D. La. Aug. 1, 2024). In a survey that included cases from both the Western District and Middle District, another court noted that attorneys with over twenty years of experience regularly receive between $300 and $375/hour. *Olive v. Tubbs*, 2023 WL 6420794, at *8 (W.D. La. Sep. 29, 2023). The undersigned has also approved a rate of $395/hour for a local attorney with over thirty years of litigation experience in a construction dispute. *ADB Commercial Constr. (La.) LLC v. St. Charles Housing LP*, 2023 WL 8263433, at *2 (W.D. La. Nov. 29, 2023). Based on these results, the court determines that rates of $325/hour for Mr. Brady and $375/hour for Mr. Bohrer are warranted. The rates ($100/hour and $75/hour, respectively) requested for paralegals and staff are

reasonable within this market and require no further reduction. *Accord Revell*, 2024 WL 3625214 at *4 (approving $95/hour for paralegal services); *Olive*, 2023 WL 6420794 at *2 (same); *Lee v. Boyd Racing LLC*, 2025 WL 913462, at *2 (W.D. La. Mar. 25, 2025) (approving $125/hour for paralegal services).

Plaintiff's counsel billed a total of 32.3 hours on this matter, divided as follows:

| | |
|---|---|
| Philip Bohrer | 1.25 hours |
| Scott Brady | 11.05 hours |
| Paralegal | 5.00 hours |
| Support Staff | 15.00 hours |

Doc. 12, att. 7. The time entries are reasonably detailed and not excessive for the tasks described. The bulk of the tasks on this matter were done by the paralegal and support staff. Accordingly, the court finds that the hours expended were reasonable. Multiplying these hours by the above rates (1.25 Bohrer hours x $375, 11.05 Brady hours x $325, 5.00 paralegal hours x $100, and 15.00 support staff hours x $75) yields a fee of $5,685.00. The court has considered the *Johnson* factors and finds no reason to make an adjustment of this amount, especially considering that the fee awarded amounts to only about one third of plaintiff's total damages.

### c. Costs

Plaintiff makes a claim for $636.22 in costs. These include her filing fee, a Federal Express expense for the demand letter sent to defendant Alicia Williams, and the fee for a private process server to attempt service on Ms. Williams. Generally, federal courts may only award those costs articulated in 28 U.S.C. § 1920 "absent explicit statutory or contractual authorization to the contrary." *Gagnon v. United Technisource, Inc.*, 607 F.3d

1036, 1045 (5th Cir. 2010) (internal quotations omitted). Recoverable costs under § 1920 are limited to:

> (1) Fees of the clerk and marshal; (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case; (3) Fees and disbursements for printing and witnesses; (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case; (5) Docket fees under section 1923 of this title; and (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. The scope of taxable costs under § 1920 is "narrow" and "limited to relatively minor, incidental expenses[.]" *Taniguchi v. Kan Pacific Saipan, Ltd.*, 566 U.S. 560, 573 (2012).

FLSA itself provides no authorization for recovery of costs beyond § 1920. *See Fernandes v. Northline Enters., Inc.*, 2022 WL 3229510, at *4 (S.D. Tex. Jul. 25, 2022) (quoting *Gagnon*, 607 F.3d at 1045) ("In FLSA cases, the only costs that can be awarded are those listed in 28 U.S.C. § 1920 unless 'explicit statutory or contractual authorization' provides for recovery of others."). Plaintiff brings no other causes of action that might allow for recovery under other statutes. Her $405 filing fee is recoverable under § 1920. 28 U.S.C. § 1920(5); *Alejandro v. Prop. Care Sols. LLC*, 2022 WL 3223176, at *7 (E.D. Tex. Aug. 9, 2022). The court can find no authority for the recovery of mailing fees for the demand letter. Costs for private process servers are not recoverable under § 1920, absent exceptional circumstances. *Zastrow v. Houst. Auto M. Imports Greenway, Ltd.*, 695 F. App'x 774, 780 (5th Cir. 2017). The court notes that this default is against 1st Abundant,

rather than Ms. Williams, and plaintiff has not argued that exceptional circumstances exist. Accordingly, the recovery of costs is limited to the $405 filing fee.

### d. Interest

Lastly, plaintiff requests pre- and post-judgment interest. Doc. 1, p. 10. Pre-judgment interest is not available for FLSA claims, like this one, that seek compensation for unpaid overtime wages and liquidated damages. *Champion*, 2022 WL 3693461 at *10 (citing *Knowlton v. Greenwood Indep. Sch. Dist.*, 957 F.2d 1172, 1183 (5th Cir. 1992)). Plaintiff is, however, entitled to post-judgment interest "calculated from the date of the entry of the judgment, at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding the date of the judgment." *Melendez v. DJJRN, Inc.*, 2020 WL 7774940, at *6 (N.D. Tex. Nov. 16, 2020). Post-judgment interest will therefore be awarded, running from the date of judgment at the court's published rate for the week prior to the date of judgment until the date paid. *Id.* (citing 28 U.S.C. § 1961).

## III.
### CONCLUSION

For the reasons stated above, the Motion for Default Judgment [doc. 12] will be **GRANTED** and judgment will be entered for plaintiff against defendant 1st Abundant Home Care LLC on plaintiff's claim for unpaid overtime wages under 29 U.S.C. § 207. Plaintiff is awarded $16,047.14 in damages, $5,685.00 in attorney fees, and $405.00 in costs, with post-judgment interest.

**THUS DONE AND SIGNED** in Chambers on the 13th day of August, 2025.

JAMES D. CAIN, JR.
**UNITED STATES DISTRICT JUDGE**